IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BLUEFIELD DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                      CRIMINAL ACTION NO. 1:18-cr-00133

MACEO MILLARD JONES,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the Defendant's "*Emergency Motion for Release from Detention Based on the COVID-19/Delta Pandemic; Compassion [sic] Release/Home Detention from the Bureau of Prisons*" (ECF No. 20), the *Unites States Response to Defendant's "Emergency Motion for Release from Detention Based on the COVID-19/Delta Pandemic; Compassion Release/Home Detention from the Bureau of Prisons*" (ECF No. 23), the Defendant's letter to the Court received on September 28, 2021 (ECF No. 25), Defendant's "*Motion of Extraordinary or Expedite [sic] Compelling Circumstances Title 3582(c)(1)(A)/Title 18 U.S.C. 4205(g)*" (ECF No. 26), which the Court construes as the Defendant's reply to the United States' response in opposition to his motion, as well as the *United States Response to Defendant's Letter (ECF No. 25)* (ECF No. 27). For the reasons stated herein, the Court finds that the Defendant's motion should be denied.

**Factual Background**

On July 6, 2018, the Defendant pleaded guilty to single count Information, to-wit: knowingly and unlawfully possessing a dangerous weapon, a handcrafted prison "shank" in a

1

federal facility, FCI McDowell, in violation of 18 U.S.C. § 930(a); the Court sentenced the Defendant to five months incarceration, to run consecutive to his undischarged term of imprisonment (ECF No. 14).

In support of his request for compassionate release, the Defendant asserts that he is 66 years old, suffers serious health conditions, including hypertension, chronic viral hepatitis C and strep cellulitis; he also states that he was infected with "corona variants fatal virus on or about December 14th 2021 [*sic*] until January 18th 2021." (ECF No. 20) He asserts that he continues to be at risk of severe complications should he contract COVID-19, as many inmates at the federal prison in Victorville have contracted the virus. In addition, he argues that he presents no danger to the public, and has sought rehabilitative and educational programs whenever they are available, though several such programs have been postponed due to the pandemic.[1]

In response, the United States reminds that Court that the Defendant was sentenced to a 5-month term of incarceration for possessing a shank when he was incarcerated at FCI McDowell, and that the sentence was to run consecutive to his underlying 53 years to life sentence that was previously imposed by the D.C. Superior Court upon his 1983 convictions of conspiracy, second-degree burglary while armed, two counts of armed robbery, assault on a police officer while armed,

---

[1] Though the Defendant also filed what has been docketed as "Additional Documentation" (ECF No. 25) in support of his "Emergency Motion", which purports an additional ground for compassionate release, that being the Defendant's father died on September 20, 2021 and the Defendant has asked that the funeral be delayed so that he may attend. The undersigned notes, and is in agreement with the United States' position (ECF No. 27), that this Court lacks the authority to order any such temporary release on such a basis, notwithstanding the Court's authority to exercise its discretion under Section 3582. Nevertheless, the "Bureau of Prisons may release a prisoner from the place of his imprisonment for a limited period" to visit a relative who is dying or attend a relative's funeral. 18 U.S.C. § 3622(a)(1), (2). Further, a warden "may authorize a furlough, for 30 calendar days or less for an inmate to . . . [b]e present during a crisis in the immediate family." 28 C.F.R. § 570.33(b). However, while such regulations "state the conditions that must be satisfied before a furlough is granted, the regulations do not require the granting of a furlough upon the satisfaction of these conditions." Clay v. LaManna, 2008 U.S. Dist. LEXIS 84728, 2008 WL 4680579, at *3 (D.S.C. Oct. 21, 2008). In short, the Court would encourage the Defendant to explore this option for temporary release through the Warden.

assault with a dangerous weapon, and carrying a pistol without a license, among other underlying felony convictions, including robbery, armed robbery and abduction. (ECF No. 23; ECF No. 23-2 at 9) The United States also points out that the Defendant has been disciplined multiple times since 2017, including three times in 2021: once for possessing drugs/alcohol and twice for refusing to obey an order. Contrary to the Defendant's allegations, the United States contends that medical records do not confirm that he contracted COVID-19, but he had received both doses of the Moderna vaccine, and further, according to records, there are no inmates at Victorville who are positive for the virus and that thousands of inmates have been fully vaccinated. Moreover, the Bureau of Prisons (BOP) has been very proactive in vaccinating both staff and inmates and have taken measures to protect both since the beginning of the pandemic.

The United States argues that there are no extraordinary and compelling reasons to justify the Defendant's motion pursuant to 18 U.S.C. § 3582(c)(1)(A): there is no indication that any of his physical ailments cause him to be particularly susceptible to a severe reaction to COVID-19; the Defendant is fully vaccinated, as well as over 2700 other inmates, thus further reducing his risk of contracting the virus at his institution; the Defendant's criminal history and recent disciplinary infractions while incarcerated show that in addition to showing he has no regard for legal authority, he continues to be a danger to the community; and none of the factors espoused under 18 U.S.C. § 3553(a) support his early release. However, should this Court grant the Defendant's motion, the United States asks that he be placed on a 14-day quarantine period and medical clearance from the BOP prior to his release to minimize the possibility of any spread of the virus, further, that the Defendant be placed on home confinement for the remainder of his sentence.

The undersigned notes that the Superior Court of District of Columbia granted the Defendant's motion for compassionate release regarding his underlying sentence on August 23, 2021 (ECF No. 23-2) and that the BOP Inmate Finder tool indicates that the Defendant is located at USP Victorville, with an anticipated release date of January 23, 2022. Thus, the Defendant is now serving his sentence imposed by this Court.

Pursuant to 18 U.S.C. § 3582, a Court may modify or reduce a term of imprisonment "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility . . ." 18 U.S.C. § 3582(c)(1)(A). If such circumstances exist, the Court may modify or reduce the term of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a), and finding that "extraordinary and compelling reasons warrant such a reduction" and "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." Id. at § 3582(c)(1)(A)(i).

Before a court grants compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), it must determine both that "there are extraordinary and compelling reasons to reduce the defendant's sentence" and "consider the sentencing factors of 18 U.S.C. § 3553(a) to determine whether modifying or imposing a new sentence is appropriate." United States v. Payne, No. 1:18-CR-00025-26, 2020 WL 6334798, at *2 (W.D. Va. Oct. 29, 2020) (analyzing factors and granting early release to inmate with medical conditions placing her at high risk of severe complications from COVID-19 and a minor child requiring cancer treatment that caregivers were not providing, after concluding that the time served was sufficient given her minor role in the original offense, lack of

prior criminal history, and efforts toward rehabilitation). The analysis requires fact-specific inquiry into a defendant's circumstances and offense.

The Fourth Circuit recently addressed the scope of relief available under § 3582(c)(1)(A), concluding that courts may make an individualized determination about whether "extraordinary and compelling" reasons for release exist pending the adoption of an "applicable policy statement" by the Sentencing Commission, with which reductions must be "consistent." United States v. McCoy, 981 F.3d 271, at 274, 284 (4th Cir. Dec. 2, 2020). "[U]nder the statute, a defendant becomes *eligible* for relief only if the court finds that a reduction is both (1) warranted by 'extraordinary and compelling reasons' and (2) 'consistent with applicable policy statements issued by the Sentencing Commission.' " United States v. High, 997 F.3d 181, 186 (4th Cir. May 7, 2021) (*italics* in original). With respect to COVID-19, the Fourth Circuit reasoned that a combination of allegations that the risk of contracting the illness is higher in prison than in the community, and that the inmate has preexisting medical conditions that increase the risk of serious or fatal illness could state a compelling case. Id. at 185 (further noting that an inmate could also present a strong case if she contracted COVID-19, the prison was unable to address the condition, and there were "circumstances calling for compassion"). Even if a defendant demonstrates extraordinary and compelling reasons for a sentence reduction, the motion could be denied based on the court's consideration of the § 3553(a) sentencing factors. Id. at 186-187 (holding that a district court's denial of a motion based on analysis of § 3553(a) factors, without addressing the asserted extraordinary and compelling reasons supporting release, contained adequate reasoning to support the decision).

Although courts can consider motions brought under 18 U.S.C. § 3582(c)(1)(A) directly from defendants, inmates are still required to exhaust administrative remedies by first filing a request with the Warden. While it is not clear that the Defendant sought relief from the BOP or has otherwise exhausted his administrative remedies[2], the Court nevertheless has considered the Defendant's motion.

As an initial matter, despite the Defendant's assertions otherwise, the Court notes that the Bureau of Prisons' Coronavirus information page indicates that there are zero active cases inmate cases in USP Victorville, one inmate death, zero staff deaths, 468 recovered inmates, 80 recovered staff members, and that a total of 2780 inmates as well as 423 staff members have been fully inoculated from COVID-19. *COVID-19 Coronavirus*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last accessed September 29, 2021). The Defendant's advanced age and health issues notwithstanding, the Court finds that he has not established extraordinary and compelling reasons supporting a sentence reduction based on this information.

Even if the Defendant could establish such extraordinary and compelling reasons, however, the § 3553(a) factors would weigh against granting early release. He has served just over one month of his original five-month sentence. Although this sentence is comparatively brief to the original underlying sentence of 53 years to life, of which he served 38 years, the five-month sentence already represented a substantial reduction of the maximum penalty that could have been imposed, that is not more than one year and/or a fine up to $100,000. At the time of the Defendant's sentencing, the Court fully explained the reasons for the sentence imposed pursuant to the factors

---

[2] See, e.g., United States v. Thompson, 458 F.Supp.3d 482 (S.D.W. Va. May 5, 2020)(Goodwin, J.)(denying a motion for compassionate release for failure to exhaust administrative remedies as they are statutorily mandated, despite alleged risk of contracting COVID-19).

set forth in 18 U.S.C. § 3553(a), as well as the directives of United States v. Booker, 125 S.Ct. 738 (2005), and United States v. Hughes, 401 F.3d 540 (4th Cir. 2005), as it was necessary to adequately punish the Defendant for his serious offense, to instill within the Defendant and the public a proper respect for the law, and to provide for a proper period of incapacitation and rehabilitation.

Additionally, despite the fact the D.C. Superior Court granted the Defendant's *pro se* motion for compassionate release, it is noted that the D.C. Superior Court erroneously found that the Defendant "has not incurred any infractions for violent acts since 2016." (ECF No. 23-2 at 2-3) Of interest here, the Defendant had entered a plea before the undersigned for a disciplinary infraction, possessing a shank, that occurred on December 5, 2017. (ECF No. 14) In the incident report concerning this offense (ECF No. 23-1), a unit officer located the shank during a search of the Defendant's cell. The Defendant not only refused a direct order from the unit officer to leave his cell, but also grabbed the officer by the arm and shoulder and threw the officer to the ground in order to grab the shank and kicked the officer from behind causing the officer to fall to the ground again as the Defendant ran to another cell to dispose of the item. Prison staff were able to locate the shank despite the Defendant's efforts. During the plea hearing before the undersigned, the Defendant admitted to all this.

In addition to the shank violation, which demonstrates the Defendant's propensity for violent acts, the Defendant was also disciplined in January 2017 for fighting with another inmate; the Defendant was also disciplined for non-violent offenses since then, including three separate incidents in 2021 alone: twice for failing to obey an order and once for possession of drugs (ECF No. 23-3). The Defendant's current sentence is the result of a violent act, and stems from a pattern of disciplinary violations during his incarceration – the significance of this cannot be understated.

To the extent that the Defendant is alleging inadequate medical care (ECF No. 26 at 2-3), this Court is the improper forum to bring such claims, as those should be brought before a court of appropriate jurisdiction, that is, to the court situated in the jurisdiction of the Defendant's current imprisonment. See 28 U.S.C. §§ 1346(b) and 2671, *et seq.*; Bivens v. Six Unknown Federal Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 24 L.Ed.2d 619 (1971). To the extent that the Defendant is alleging he had no intention of entering a plea of guilty in this case (Id. at 3), and to the extent that this can be construed as a form of habeas challenge, the Court notes that it has been over three years since the Defendant was sentenced on his violation of 18 U.S.C. § 890(a), and therefore well beyond the one-year period of limitation governing such motions for collateral relief. See, e.g., 28 U.S.C. § 2255. In any event, the Court observes that the Defendant never filed any challenge or appeal concerning his plea.

In sum, the Court finds that regardless of the decision issued by the D.C. Superior Court, the Defendant's underlying sentence herein is the result of his continued pattern of prison disciplinary violations, which follows a violent and serious criminal history that spans decades. The Defendant was already given a reduced sentence by virtue of his plea, the maximum penalty being up to one year incarceration, however, reducing an already reduced sentence would undermine the efforts of this Court to instill respect for the law and to provide just punishment. Further, despite the Defendant's prior lengthy prison sentence, attempts at rehabilitation do not appear to have borne fruit – indeed, a reduction of the Defendant's sentence in this matter would not afford adequate deterrence to similar criminal conduct, and would only unduly denigrate the seriousness of the underlying offense. Further, despite the Defendant's misgivings of the medical care he has received at USP Victorville, the fact remains he does receive medical care and has full

access to same. The undersigned is fully aware that the BOP has expended great efforts towards protecting its staff and inmates from COVID-19 and has implemented procedures that protect both from contracting the virus.

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that the Defendant's pro-se "*Emergency Motion for Release from Detention Based on the COVID-19/Delta Pandemic; Compassion [sic] Release/Home Detention from the Bureau of Prisons*" (ECF No. 20) be **DENIED**.[3]

The Court **DIRECTS** the Clerk to send a copy of this Order to the Defendant and counsel, to the United States Attorney, to the United States Probation Office, and to the Office of the United States Marshal.

        ENTER:    October 4, 2021



Omar J. Aboulhosn
United States Magistrate Judge

---

[3] For the reasons set forth above, the Defendant's Motions for Appointment of Counsel and Letter requesting that copies of his pleadings be sent to a pro bono attorney located in Georgia (ECF Nos. 22, 24) are hereby **DENIED** as **MOOT**.